UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SONYA DURAKU, NIEVES SANCHEZ, and
JULIA INIRIO,                                                      **Civil Action No.:**   09 CV 09351-DLC

                 Plaintiffs,

                                             **COMPLAINT**

  - against -

TISHMAN SPEYER PROPERTIES, INC.                     **Jury Trial Demanded**

                 Defendant.
------------------------------------------------------------X

     Plaintiffs, SONYA DURAKU, NIEVES SANCHEZ, and JULIA INIRIO, by and through their attorneys, MISIANO SHULMAN CAPETOLA & KESSLER, LLP., complaining of the defendant TISHMAN SPEYER PROPERTIES, INC., allege as follows:

## INTRODUCTION

    1.    This is an action, brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, (hereinafter referred to as "Title VII"); the New York State Human Rights Law, Executive Law § 296 *et seq.*, (hereinafter referred to as "Executive Law"), and the Administrative Code of the City of New York § 8-107 *et seq.* (hereinafter referred to as "Administrative Code"), and seeks to remedy employment discrimination, based upon plaintiffs' gender and national origin, in the terms and conditions of employment and retaliation for opposition to unlawful employment practices. Plaintiffs seek injunctive and declaratory relief, compensatory and punitive damages, and other appropriate legal and equitable relief pursuant to Title VII, the Executive Law, and the Administrative Code.

## STATEMENT PURSUANT TO LOCAL RULE 9

2.    For purposes of complying with Local Rule 9, plaintiffs state that they have no corporate parent, subsidiary or affiliate and that there are no other interested parties.

## JURISDICTION & VENUE

3.    Jurisdiction of the Court over this controversy is based upon 42 U.S.C. § 2000e *et seq.*, 28 U.S.C. § 1331 and the doctrine of supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

4.    This Court has jurisdiction over all state law claims brought in this action pursuant to 28 U.S.C. § 1367.

5.    Defendant, TISHMAN SPEYER PROPERTIES, INC. (hereinafter referred to as "defendant") is a New York State corporation located in New York, County of New York, State of New York, which is within the Southern District of New York.

6.    Accordingly, this action properly lies in the Southern District of New York, pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES
## ON BEHALF OF PLAINTIFFS,
## SONYA DURAKU, NIEVES SANCHEZ, AND JULIA INIRIO.

1.    On or about, January 23, 2009, the plaintiffs, SONYA DURAKU, NIEVES SANCHEZ, and JULIA INIRIO, each filed written Charges of discrimination based on gender and national origin and retaliation with the United States Equal Employment Opportunity Commission (hereinafter referred to as "EEOC").

2.    Plaintiff, SONYA DURAKU's Charge was assigned Charge No.: 520-2009-01411.

2

3.      Plaintiff, NIEVES SANCHEZ's Charge was assigned Charge No.: 520-2009-01410.

4.      Plaintiff, JULIA INIRIO's Charge was assigned Charge No.: 520-2009-01409.

5.      In the aforesaid Charges of discrimination and retaliation, plaintiffs, SONYA DURAKU, NIEVES SANCHEZ, and JULIA INIRIO, alleged, *inter alia*, sought to remedy employment discrimination, perpetrated by the defendant, based upon plaintiffs' gender and national origin, in the terms and conditions of employment and retaliation for opposition to unlawful employment practices in violation of Title VII, Executive Law, and Administrative Code.

6.      On or about August 14, 2009, the EEOC issued a "Notice of Right to Sue" to plaintiffs, SONYA DURAKU, NIEVES SANCHEZ, and JULIA INIRIO, with reference to their individual Charges of discrimination and retaliation, and same was received by plaintiffs on or about August 20, 2009. The Notices of Right to Sue advised plaintiffs, SONYA DURAKU, NIEVES SANCHEZ, and JULIA INIRIO, of their right to file an action against the defendant in the appropriate federal court within ninety (90) days of her receipt thereof.

7.      The within action is being filed timely within the time prescribed by law.

## THE PARTIES

7.    Plaintiff, SONYA DURAKU, during all relevant times hereinafter mentioned, was and still is a citizen of the State of New York, County of Richmond, currently residing at 171 Garfield Avenue, Staten Island, New York.

8.    Plaintiff, NIEVES SANCHEZ, during all relevant times hereinafter mentioned, was and still is a citizen of the State of New York, County of New York, currently residing at 1990 Lexington Avenue, Apt. 6E, New York, New York.

9.    Plaintiff, JULIA INIRIO, during all relevant times hereinafter mentioned, was and still is a citizen of the State of New York, County of New York, currently residing at 601 109th Street, Apt. 63, New York, New York.

10.    Upon information and belief, defendant was and still is a New York State corporation, maintaining a place of business in the County, City, and State of New York

11.    All times herein mentioned, defendant was and still is an "employer" as defined by Title VII, Executive Law, Administrative Code, and all other applicable State statutes.

## FACTS

12.    That plaintiff, SONYA DURAKU, is a female.

13.    That plaintiff, SONYA DURAKU, is of Albanian descent.

14.    That since 1986, the plaintiff, SONYA DURAKU, has been employed by the defendant as a foreperson at the commercial building located at 666 Fifth Avenue, New York, New York.

15.    Starting sometime in 2006, plaintiff, SONYA DURAKU, was subjected to hostile work environment due to frequent incidents of discrimination based on her gender by her co-workers and supervisors.

16.    Starting sometime in 2006, plaintiff, SONYA DURAKU, was subjected to a hostile work environment due to frequent incidents of discrimination based on her national origin by her co-workers and supervisors.

17.    As a result of plaintiff, SONYA DURAKU's complaints to her supervisors of incidents of a hostile work environment due to frequent incidents of discrimination and filing a Charge with the EEOC for same, she was retaliated against by defendant.

18.    That plaintiff, NIEVES SANCHEZ, is a female.

19.    That plaintiff, NIEVES SANCHEZ, is of Dominican Republic descent.

20.    That since 1994, the plaintiff, NIEVES SANCHEZ, has been employed by the defendant as a cleaner at the commercial building located at 666 Fifth Avenue, New York, New York.

21.    Starting sometime in 2007, plaintiff, NIEVES SANCHEZ, was subjected to hostile work environment due to frequent incidents of discrimination based on her gender by her co-workers and supervisors.

22. Starting sometime in 2007, plaintiff, NIEVES SANCHEZ, was subjected to a hostile work environment due to frequent incidents of discrimination based on her national origin by her co-workers and supervisors.

23. As a result of Plaintiff, NIEVES SANCHEZ's complaints to her supervisors of incidents of discrimination and filling a charge with the EEOC for same, she was retaliated against by defendant.

24. That plaintiff, JULIA INIRIO, is a female.

25. That plaintiff, JULIA INIRIO, is of Dominican Republic descent.

26. That since 1995, the plaintiff, JULIA INIRIO, has been employed by the defendant as a cleaner at the commercial building located at 666 Fifth Avenue, New York, New York.

27. Starting sometime in 2007, plaintiff, JULIA INIRIO, was frequently subjected to discrimination based on her gender by defendant.

28. Starting sometime in 2007, plaintiff, JULIA INIRIO, was frequently subjected to discrimination based on her national origin by defendant.

29. As a result of plaintiff, JULIA INIRIO, being discriminated against at work due to her gender and national origin, plaintiff was subjected to a hostile work environment by her co-workers and supervisors.

30. As a result of Plaintiff, JULIA INIRIO's complaints to her supervisors of incidents of discrimination and filing a charge with the EEOC for same, she was retaliated against by defendant.

31. Starting sometime in 2006, Rommie Coward, a co-worker and a foreman, frequently made comments to plaintiff, SONYA DURAKU, to the effect of "all

Albanians were mafia, and are going to be fired."

32. Robert Francis, plaintiffs' supervisor, was aware of Coward's unlawful language toward plaintiffs.

33. Upon information and belief, neither defendant nor Francis investigated Coward's discriminatory and unlawful behavior.

34. Sometime in April 2007, defendant hired William Lee as a supervisor on the evening shift.

35. Defendant assigned Lee to the same floors as plaintiffs.

36. Lee's frequent discriminatory conduct toward plaintiffs, SONYA DURAKU, NIEVES SANCHEZ, and JULIA INIRIO, created a hostile work environment for plaintiffs.

37. Francis and Lee frequently harassed plaintiffs', NIEVES SANCHEZ and JULIA INIRIO, regarding her Dominican accented English. Francis would frequently say to plaintiffs, "I don't know what happened to Spanish people . . . they don't know how to speak English."

38. Plaintiff, NIEVES SANCHEZ, also witnessed Francis and Lee make discriminatory and harassing remarks about her Albanian co-workers, such as, "Albanians' smell."

39. Francis stated to plaintiff, JULIA INIRIO, on numerous occasions that she was "stupid," that she "should learn English," that "Albanians are idiots," and "Spanish people are dumb."

40. Francis often made discriminatory comments to plaintiff, NIEVES SANCHEZ, based on gender and/or national origin. Francis frequently stated to plaintiff, "fire

7

everybody because we don't not want anymore Albanians or their Spanish speaking friends."

41.   When plaintiff, NIEVES SANCHEZ, made complaints to Francis, he would state, "all of you women give me a headache - we should fire all of you."

42.   Lee would visit plaintiff, JULIA INIRIO, while she worked and make harassing comments regarding his sex life such as, "my weekend was terrible, I got no chicky, chicky, chicky," and "things are terrible, my wife will not have sex with me."

43.   Lee also made other sexually harassing comments to plaintiff, JULIA INIRIO, such as, "your breasts are beautiful," "you have a beautiful body," and "my penis is too small, it won't scare you."

44.   Starting sometime in April 2007, Lee began to follow plaintiff, SONYA DURAKU, during work and would sit extremely close to her.

45.   Plaintiff, JULIA INIRIO, frequently observed Lee's inappropriate behavior toward plaintiff, SONYA DURAKU.

46.   On or about April 23, 2007, Coward stated "we have to stop the Albanian mafia in this building," and he also referred to plaintiff, SONYA DURAKU, as a "white bitch."

47.   Omar Lebbara, (first name unknown) Mulaj, Enver Osa, Tony Lucaj, Albert Asani, and plaintiff, NIEVES SANCHEZ, all employees of defendant, heard Coward make these comments.

48.   Plaintiff, JULIA INIRIO, also heard Coward say that he wanted to get plaintiff, SONYA DURAKU, "out."

49.   Sometime in early 2007, Coward put a red laser light on the backside of plaintiff, JULIA INIRIO, every time she passed him.   Plaintiff, SONYA DURAKU,

witnessed Coward do this.

50. Plaintiff, JULIA INIRIO, confronted Coward sometime in 2007, and asked him to cease his sexually harassing behavior, but Coward dismissed plaintiff, and stated, "it was just a joke."

51. On April 24, 2007, while plaintiff, SONYA DURAKU, was working with Lee, he tried to touch the inner thigh of her legs. He also said, "I can't stop looking at your chest. My wife doesn't do anything," and he continued to speak about his lack of a sex life at home. Plaintiff, SONYA DURAKU, walked away and told Lee, "I do not like you doing that to me." Plaintiff, NIEVES SANCHEZ, witnessed Lee harass plaintiff, SONYA DURAKU, that night.

52. Immediately thereafter, plaintiff, SONYA DURAKU, went to the 14th floor to speak to Thomas Lloyd, the head of defendant's supervisors, and complained about Lee's discriminatory and harassing conduct. Lloyd, Jessica Rieves, the building manager, and Francis discussed the incident with plaintiff, SONYA DURAKU. Lloyd promised plaintiff, SONYA DURAKU, that he would investigate and resolve the incident.

53. Upon information and belief, neither Lloyd nor Francis investigated plaintiff, SONYA DURAKU's complaint.

54. A few days later, a woman from Human Resources held a meeting with plaintiff, SONYA DURAKU, and Lee. Plaintiff, SONYA DURAKU, did not speak openly about the incident because Lee was present during the conversation, and plaintiff was scared and intimidated by him.

55. On April 24, 2007, Tony Lucaj, a former security guard who is Albanian and worked at defendant's building, told plaintiff, SONYA DURAKU, that Coward was

saying negative things at the front desk about the "Albanian mafia." Soon thereafter, Lucaj had a stroke and never returned to work.

56.    On May 4, 2007, Coward stated to plaintiff, SONYA DURAKU, "we will get rid of all Albanian mafia one by one. Bedri was first, then Bejto, now they got rid of Tony."

57.    On May 21, 2007, plaintiff, SONYA DURAKU, called in sick and spoke with Lindsay (last name unknown), a secretary for the defendant. The next day, Francis was upset with plaintiff, SONYA DURAKU, because he claimed that she never called in sick.

58.    Upon information and belief, Francis began to retaliate against plaintiff, SONYA DURAKU, as a result of her complaints of Lee and Coward.

59.    In May of 2007, Francis warned plaintiff, NIEVES SANCHEZ, to stay away from plaintiff, SONYA DURAKU, and Francis stated, "she's driving me crazy and she is going to be fired."

60.    In May of 2007, plaintiff, NIEVES SANCHEZ, witnessed Lee follow Martina Torres, a cleaner for the defendant, while she worked. Plaintiff, NIEVES SANCHEZ, heard Lee tell Torres that she had a "beautiful chest" and that her "chest [was] so big that you could use it as a mop."

61.    Immediately after, plaintiff, NIEVES SANCHEZ, and Torres made a complaint to Francis about Lee's behavior. Francis responded by laughing.

62.    Sometime thereafter, on several occasions, Lee approached plaintiffs, NIEVES SANCHEZ and JULIA INIRIO, and unzipped his pants in an effort to show plaintiffs his penis. Lee would then state, "there is nothing to be scared of because my penis is small," or, "I have not used it in a long time, because my wife will not do anything for me."

10

Plaintiffs, NIEVES SANCHEZ and JULIA INIRIO, made verbal complaint to Francis regarding Lee's unlawful behavior.

63.    Upon information and belief, Francis dismissed plaintiffs' complaints regarding Lee, and never investigated Lee's harassing and unlawful behavior.

64.    On May 22, 2007, when plaintiff, SONYA DURAKU, was notified that Coward was assigned to the same shift as her, she told Francis, her supervisor and the person in charge of scheduling the shifts, that she could not work with Coward due to his previous discriminatory and harassing conduct toward her.  Francis dismissed plaintiff, SONYA DURAKU's concerns and told her to "try very hard, you can do it."

65.    Upon information and belief, Francis purposefully assigned Coward to plaintiff, SONYA DURAKU's shift in order to create a more hostile work environment for plaintiff in an effort to make her quit.

66.    Starting on May 24, 2007, until the day plaintiff, SONYA DURAKU, was suspended by defendant, Coward, Ali Gurerra, a lobby cleaner, Dia Mortensen, a night supervisor, security in the lobby, and other tenants began warning plaintiff, SONYA DUAKU, to be careful because the supervisors and some employees were trying to get her fired.

67.    On May 25, 2007, Lee told plaintiff, SONYA DURAKU, "I can't stop looking at your ass and tits."  Plaintiff walked away from him and did not complain to her supervisor, because her previous complaints about Lee were never addressed.

68.    Upon information and belief, Lee, in an effort to intimidate and harass the plaintiff, SONYA DURAKU, repeatedly made sexually inappropriate comments when he was in plaintiff's presence.

69. Upon information and belief, on May 30, 2007, Ndue "Tony" Lucha, a former midnight porter, complained to Francis that Coward was referring to the Albanian workers in the building as "Albanian mafia" and also called plaintiff, SONYA DURAKU, a "white bitch."

70. Upon information and belief, Francis did not investigate Coward's discriminatory acts in an effort to intimidate and harass plaintiff, SONYA DURAKU.

71. On June 12, 2007, Lee stated to plaintiff, SONYA DURAKU, "you are not letting me and Rommie do our jobs." Lee then proceeded to falsely accuse plaintiff of stating "when I leave, I will take all the contracts with me." Plaintiff informed Lee that she never made that comment. Lee replied, "you have no power anymore like before and you should deal with it."

72. Plaintiff, SONYA DURAKU, immediately informed plaintiff, NIEVES SANCHEZ, about the conversation. A half (1/2) hour later, plaintiff, SONYA DURAKU, began to have chest pains due to stress. Plaintiff, SONYA DURAKU, also informed Lee of the same.

73. Later that night, Lee ordered plaintiff, SONYA DURAKU, to leave because he re-assigned Coward to her overtime shift.

74. Upon information and belief, Lee purposefully denied plaintiff, SONYA DURAKU's overtime shifts in retaliation for her complaints against him.

75. Upon information and belief, Lee and plaintiffs' supervisors had joined efforts to harass and discriminate against plaintiff, SONYA DURAKU, in an attempt to create an environment so hostile, that she would resign.

76. Upon information and belief, sometime in 2007, plaintiff, SONYA DURAKU,

began to suffer emotionally and physically due to the hostile work environment she was being subjected to at work.

77. On June 27, 2007, Lee assigned an overtime shift to a cleaner, but Robert Johnson, a porter, took it away from the cleaner, and gave it to himself, in violation of defendant's overtime policy. That was the fourth night in a row that Johnson worked an overtime shift. Lee knew that Johnson frequently awarded himself multiple overtime shifts, and permitted him to do so.

78. The following day, plaintiff, SONYA DURAKU, complained to Francis about Johnson's behavior.

79. Upon information and belief, Francis did not investigate the situation or punish Johnson because he is a man and not of Albanian or Hispanic decent.

80. On June 29, 2007, plaintiff, SONYA DURAKU, took a sick day. That same day, Coward called plaintiff, SONYA DURAKU, to tell her that Lee had been asking the women cleaners if they had the key to plaintiff, SONYA DURAKU's office.

81. Upon information and belief, Lee wanted plaintiff, SONYA DURAKU's key so that he could go through her personal items in her locker thereby further harassing and intimidating her.

82. Upon information and belief, starting in 2007, Francis continuously gave employees who had less seniority than plaintiff, SONYA DURAKU, more overtime shifts in order to harass and intimidate her.

83. On July 12, 2007, in violation of defendant and the Service Employees International Union, Local 32BJ, (hereinafter referred to as "Local 32BJ") policy, Johnson and Coward, both of whom have less seniority than plaintiff, SONYA

13

DURAKU, were given the first choice for overtime shifts.

84.    Upon information and belief, Johnson and Coward were given preferential treatment because they are men.

85.    On July 16, 2007, Francis called plaintiff, SONYA DURAKU, into his office. Francis and Amanda Carpenter, the building manager, were also in the office and they told plaintiff that security complained about her because she brought three (3) people into defendant's building the previous Sunday. Plaintiff, SONYA DURAKU, admitted that the incident did occur, and explained that she did not realize she had violated policy.

86.    Over the past twenty-two (22) years, plaintiffs have frequently seen other security guards and/or cleaning staff bring their family members into the building during work without being disciplined by defendant.

87.    That same day, Blain McShall, the assistant building manager, told plaintiff, SONYA DURAKU, that she was written up for being in tenant space over the weekend. Plaintiff explained that she went into corridor to purchase a soda for her child, which many of defendant's employees did on a regular basis without being punished.

88.    Later that same day, plaintiff, SONYA DURAKU, went to the 14th floor and complained to Carpenter that Francis targets her to discipline, and never disciplines other employees, like Johnson, who frequently violate defendant's alleged building policy.

89.    The following day, on July 17, 2007, plaintiff, SONYA DURAKU, asked Francis if he could give her a verbal reprimand before a written reprimand because the Local 32BJ rules require that an employee's first violation be verbal. Plaintiff also reminded Francis that other workers bring their children into the building, and that he never reprimanded them for their alleged violation of defendant's policy. Francis ignored

14

plaintiff's request and comment.

90.  Upon information and belief, defendant reprimanded plaintiff, SONYA DURAKU, for bringing her family into defendant's building, a common practice amongst other defendant employees, because she is a woman and because she is of Albanian decent.

91.  On July 19, 2007, plaintiff, SONYA DURAKU, found Johnson on a floor where he was not permitted to be.

92.  Upon information and belief, Johnson was not reprimanded by defendant for violating defendant's building policy because he is a man.

93.  On August 28, 2007, Lee told plaintiff, SONYA DURAKU, that Francis is going to be cutting back on her overtime shifts, and that he will give Coward, Chuck Sin, a porter, and Johnson more overtime shifts instead.  Mulaj, an employee of defendant, was present for this conversation.

94.  On August 31, 2007, at 1:15AM, Lee, Lebbara, and plaintiff, SONYA DURAKU, were at the messenger center, and Lee began to stare at plaintiff's chest.  Lee said, "I can't stop looking at your chest."  Plaintiff attempted to ignore the comment.  Lebbara also heard Lee make this comment.

95.  Later that night, Lee said to plaintiff, SONYA DURAKU, "all night I was getting off looking at your boobs," and then Lee tried to touch plaintiff's legs.  Plaintiff immediately told Lee to stop and that he was making her feel uncomfortable.

96.  Soon there after, plaintiff, SONYA DURAKU, made a complaint to Francis about Lee's sexually harassing behavior.  Plaintiff, SONYA DURAKU, also informed plaintiff, NIEVES SANCHEZ, about the incident.

97. Upon information and knowledge, Francis did not investigate the complaint or discipline Lee.

98. Upon information and belief, defendant did not investigate Lee's sexually unlawful behavior in order to foster a hostile work environment toward plaintiffs.

99. On September 22, 2007, plaintiff, SONYA DURAKU, witnessed David (last name unknown), from the security department, go into defendant's building, the same building plaintiff works in, with his girlfriend who is not designated to enter the building.

100. Upon information and belief, David was never reprimanded for bringing a non-employee into the building because he is a man.

101. On September 24, 2007, Lee continued to sexually harass plaintiff, SONYA DURAKU, at work. Lee made comments to plaintiff such as, "your ass looks so good," and "I wish that you were my wife, because my wife looks old and never changes her clothes and wears big sweat pants."

102. Plaintiff, SONYA DURAKU, again made complaints to Francis, and asked him to change Lee's shift. Francis refused to comply with plaintiff, SONYA DURAKU's request.

103. Upon information and belief, Francis purposefully disregarded plaintiff, SONYA DURAKU's complaints and failed to investigate Lee's behavior because he wanted Lee to harass plaintiff, SONYA DURAKU.

104. Also on September 24, 2007, plaintiffs, NIEVES SANCHEZ and JULIA INIRIO, in addition to, Sedet Shabani and Mulaj, told plaintiff, SONYA DURAKU, that they saw Lee go into her office.

105. Upon information and belief, Lee got a key to plaintiff, SONYA DURAKU's office because Francis gave Lee a copy of the key, and Lee made a copy for himself and Coward.

106. Plaintiff, SONYA DURAKU, complained to Francis about Lee's invasion of her privacy. Francis, Lee's supervisor, told plaintiff he could not stop Lee from going through her locker.

107. On December 1, 2007, Lee told plaintiff, SONYA DURAKU, that he needs to know where she is at all times during her work shift. Lee's comment made plaintiff feel very uncomfortable, especially because she had more seniority than him.

108. That same day, Lee went into plaintiff, SONYA DURAKU's office and he left the office door open. When plaintiff confronted him about it, he said "I was in there looking and feeling your pictures." Immediately thereafter, plaintiff started to cry because the majority of the pictures in her office are of her two (2) daughters.

109. On October 16, 2007, Lee called plaintiff, SONYA DURAKU, over the radio while she was in the bathroom. Lee asked plaintiff for her location, and plaintiff responded that she was "busy." Later when plaintiff radioed him back, he said, "I need to know where you are at all times because I am the boss." Lee then began to call plaintiff over the radio on an hourly basis for her location status.

110. While Lee and plaintiff, SONYA DURAKU, worked together, he would frequently call her over the radio when he knew she was in the restroom. He would proceed to ask plaintiff over the radio if she was, "going number one (1) or number (2)."

111. Plaintiff, SONYA DURAKU, made complaints to Francis regarding Lee's comments.

112. Upon information and belief, Francis did not investigate or discipline Lee's discriminatory and hostile behavior.

113. On November 8, 2007, plaintiff, SONYA DURAKU, told Lee that she had to stay and clean the 23rd floor, at the request of the tenant. He said, "I'll tell you if you can stay or not." Soon thereafter, Lee told plaintiff, "I think you can stay so you can't go home and have sex with your husband." Plaintiff immediately told Lee not to speak to her like that. Lee proceeded to say, "which way do you do it? Left? Right? Upside-down? This way I can dream about it when I get home."

114. Plaintiff, SONYA DURAKU, walked away from Lee, and immediately told plaintiff, NIEVES SANCHEZ, and Mulaj about the conversation because she was extremely emotionally disturbed by his comments.

115. On November 16, 2007, Lee began making sexually inappropriate comments in the women's locker room. Lee's comments revolved around how large his penis was and how heavy his balls were. The women told him to stop, and he would say "sorry," but he immediately continued to make more inappropriate comments. Plaintiffs, SONYA DURAKU, NIEVES SANCHEZ, and JULIA INIRIO, in addition to Shabani, Hava Cobovic, Martina, Giovanna Lamay, Violetta Vokovic, Embejia Kucana, and Martina Torres all heard Lee make these comments.

116. Later that same day, plaintiff, SONYA DURAKU, told the women in the locker room that she would report the Lee's sexually explicit and harassing comments to management. Plaintiff made complaints to Francis and McShall about Lee's behavior. Francis tried to dismiss Lee's behavior. McShall got mad and said, "I do not want to hear what they (meaning the women in the locker room who heard Lee's comments) have to

say. Tell them to go to Bob Francis because I will not fire him just because they say so."

117. On December 13, 2007, Francis called plaintiff, SONYA DURAKU, and told her that Lee admitted to accusations concerning his sexually inappropriate behavior at work, and that Lee had been fired.

118. Soon thereafter, Francis, Carpenter, and Miguel Corporan, a day foreman, started to retaliate against plaintiff, SONYA DURAKU, by continuing to perpetrate the hostile work environment, which Lee had previously orchestrated.

119. Upon information and belief, Francis, Carpenter, and Corporan retaliated against plaintiff, SONYA DURAKU, by harassing her because she is a woman, of Albanian decent, and because of the complaints she made of Lee prior to his termination.

120. Upon information and belief, throughout 2007, Francis's retaliation toward plaintiff, SONYA DURAKU, included but is not limited to fabricating stories concerning plaintiff, not investigating complaints on her behalf, denying her overtime shifts, encouraging co-workers to harass her, stealing her personal items, and demoting her.

121. Starting in January of 2008, Francis became highly critical of plaintiffs, NIEVES SANCHEZ and JULIA INIRIO's work, and when either made complaints to him, Francis frequently stated, "I'm the boss, and I can do what I want."

122. On January 1, 2008, Carpenter brought in a cheap polyester suit and required plaintiff, SONYA DURAKU, to wear it. The suit did not fit plaintiff, but Carpenter forced her to wear it. Prior to this, plaintiff always wore her own professional suits to work, as did other fore-people. Immediately thereafter, plaintiff, SONYA DURAKU, informed plaintiffs, NIEVES SANCHEZ and JULIA INIRIO, in addition to Mulaj, Inirio, and Shabani, about the humiliating uniform she had to wear as a foreperson.

123. Upon information and belief, plaintiff, SONYA DURAKU, was the only foreperson that was asked to wear the blue polyester suit.

124. Upon information and belief, Carpenter required plaintiff, SONYA DURAKU, wear the suit in order to publicly humiliate her at work.

125. On May 15, 2008, Francis removed five hours of overtime work from plaintiff, SONYA DURAKU's paycheck for the prior two weeks.

126. On May 23, 2008, Francis removed additional overtime hours from plaintiff, SONYA DURAKU's paycheck. When plaintiff complained to Francis, he promised to repay plaintiff, but plaintiff has never been paid for those overtime hours worked.

127. Francis regularly failed to pay plaintiffs, SONYA DURAKU and NIEVES SANCHEZ, for all the overtime hours they worked.

128. Upon information and belief, Francis repeatedly fails to compensate plaintiffs, SONYA DURAKU and JULIA INIRIO, for all hours worked in order to further harass and discriminate against them.

129. On June 3, 2008, plaintiff, SONYA DURAKU, told Francis that one of defendant's tenants requested she complete extra cleaning work after regular hours, which would be paid at the overtime rate. Francis replied, "not you, that's a man's job," and Francis gave plaintiff's overtime shift to Coward, a male.

130. Upon information and belief, Francis assigned the male and/or non-minority cleaners overtime shifts in an effort to discriminate against the female, minority cleaners.

131. On June 12, 2008, plaintiff, SONYA DURAKU, had hours missing from her paycheck.

132. On June 17, 2008, Francis told plaintiff, SONYA DURAKU, that he removed her Saturday shifts because Orrick, a tenant in defendant's building, cancelled it. Plaintiff was only given a few days notice; however, typically forepersons are given one (1) month notice when a shift is permanently cancelled.

133. On June 19, 2008, plaintiff, SONYA DURAKU, needed to assign a cleaner to an overtime shift because a tenant requested a task be completed during overtime hours. Plaintiff, SONYA DURAKU, assigned plaintiff, NIEVES SANCHEZ, the overtime shift; however, a daytime foreman also assigned the same overtime shift to Sandra, a cleaner. That same day, Francis called plaintiffs, SONYA DURAKU and NIEVES SANCHEZ, into his office and screamed at them.

134. On June 19, 2008, Francis suspended plaintiff, SONYA DURAKU, for two (2) days because she gave the overtime shift to plaintiff, NIEVES SANCHEZ. This was the first time plaintiff, SONYA DURAKU, had been suspended in the twenty-two (22) years she worked for defendant.

135. Previously, plaintiff, SONYA DURAKU, as a foreperson, was permitted to assign cleaners to overtime shifts without approving the assignment with senior management; however, Francis now began to deny plaintiff the authority to do this.

136. That same day, plaintiff, SONYA DURAKU, made complaints about Francis's discriminatory, harassing, and retaliatory conduct to Angel Gonzalez, a union delegate from the Local 32BJ.

137. Upon information and belief, Gonzalez did not investigate plaintiff's complaints.

138. Upon information and belief, Christopher Walsh, an employee of Orrick, who is

21

a tenant in defendant's building, sent Francis an email stating that he was disappointed that plaintiff, SONYA DURAKU, had been suspended; he also called the owner of the building, Charlie Cushner, to express his disapproval over plaintiff's suspension. Cushner assured Walsh that he would take care of the situation. Angelica (last name unknown), the secretary to Cushner confirmed to plaintiff, SONYA DURAKU, that this conversation took place because she works in Cushner's office and overheard the conversation.

139. Upon information and belief, on June 20, 2008, Vinny (last name unknown), who works for Millennium, a tenant in defendant's building, asked Francis why he had suspended plaintiff, SONYA DURAKU. Francis told him that "she has to learn how to respect me." Vinny called plaintiff, SONYA DURAKU, that same day and informed her about his conversation with Francis.

140. Upon information and belief, Corporan also had a conversation with Francis concerning plaintiff, SONYA DURAKU. Francis told him that "there is a lot more bad news coming for Sonya." Corporan later told Jeneette about this conversation, and Jeneette relayed the conversation to plaintiff, SONYA DURAKU.

141. On June 23, 2008, plaintiff, SONYA DURAKU's first day back to work after her suspension, Francis told plaintiff that he received complaints from tenants concerning her *alleged* new habit of pressuring tenants to schedule cleaning jobs during overtime shifts. Plaintiff immediately denied these accusations, and insisted that she now preferred to avoid overtime shifts because it always resulted in further harassment from Francis.

142. That same day, plaintiff, SONYA DURAKU, called Gonzalez, from Local 32BJ, and cancelled the meeting, which she previously scheduled to discuss the back-pay

22

she was owed from defendant. Plaintiff cancelled the meeting because she was scared of the potential retaliatory reaction from Francis.

143. On June 24, 2008, (first name unknown) Matos, an employee of the Victoria Secrets, a tenant in defendant's building, called plaintiff, SONYA DURAKU, and complained about Francis's disrespectful attitude. Matos stated that Francis questioned him as to why he requested certain cleaning jobs be done after hours. Matos replied, "that's how I was told [to schedule it] by my boss." Francis then ordered Matos to not give any overtime work to plaintiff, SONYA DURAKU. Matos and his boss later relayed this conversation to plaintiff, SONYA DURAKU. Matos also spoke to plaintiffs, NIEVES SANCHEZ and JULIA INIRIO, and Mulaj about Francis's behavior.

144. On July 9, 2009, Corporan called plaintiff, SONYA DURAKU, into a room where he was watching pornographic videos so she could watch it with him. Plaintiff informed him that it made her feel very uncomfortable and annoyed. Corporan also showed these videos to Jenette, Mulaj, and plaintiff, JULIA INIRIO.

145. On July 10, 2008, Francis walked into the woman's locker room, where approximately thirty (30) women had congregated. When the women saw Francis, they started to complain about the ripped upholstery on the chairs in their locker room. Francis proceeded to scream in a fit of rage at them stating, "next time Sadete and Juila speak, I will suspend them!" He then proceeded to scream, "Nieves, do you know what I would really like to do? I'd like to fire half the staff in this building." Plaintiffs, SONYA DURAKU, NIEVES SANCHEZ, and JULIA INIRIO, Ali, Carmnen, Ad, and Julia Palio were all present in the locker room during this incident.

146. On July 11, 2008, Matos, who works for Victoria Secrets, a tenant in defendant's building, gave plaintiff, SONYA DURAKU, a cleaning request to be completed during overtime hours. Plaintiff relayed the request to Mortensen, and Mortensen told her that Francis said "anyone can do overtime shifts except for you [Sonya Duraku], because you [Sonya Duraku] hide overtime work from others." Mortensen then radioed Francis in front of plaintiff, SONYA DURAKU, about the overtime request from Matos. Francis replied over the radio, which plaintiff, SONYA DURAKU, heard, and directed plaintiff to call the tenant and lie that she could not do the overtime request because she had other work to do. Mulaj also witnessed this encounter.

147. Plaintiff, SONYA DURAKU, was called into Francis's office for a meeting later that day. Francis told plaintiff that she was no longer permitted to take the XYZ car service home. Defendant permitted the fore-people to take this car service home when working after hours, but Francis now denied plaintiff, SONYA DURAKU, this privilege.

148. Upon information and belief, Francis denied plaintiff, SONYA DURAKU, defendant's privilege of using the car service in retaliation for her continued complaints of discrimination.

149. On July 14, 2008, Francis told plaintiff, JULIA INIRIO, that he wants to fire all cleaning ladies and hire only men from now on. Additionally, Francis said that he wants to put all the women in one room and "burn them." Plaintiffs all were present for this conversation as was Mortensen and Mili Acosta, an employee of defendant.

150. On July 15, 2008, Johana Thorman, the executive assistant to the President and CEO of Henri Bendal, one of defendant's tenants, wrote an email to Matos praising plaintiff, SONYA DURAKU's work and expressing disappointment that she was not

assigned to more overtime cleaning shifts.

151. On August 1, 2008, Matos called plaintiff, SONYA DURAKU, and told her that Corporan came to speak to him. Corporan told Matos that plaintiff, SONYA DURAKU, was not a good foreperson and that she overcharges tenants for cleaning services. Corporan also requested that Matos not disclose the conversation to plaintiff.

152. Upon information and belief, Corporan purposefully spread lies about plaintiff, SONYA DURAKU, in retaliation of her complaints of discrimination and in an effort to have her fired.

153. Later that same day, several cleaners and Ted (last name unknown), a security guard, told plaintiff, SONYA DURAKU, that the supervisors are recording all of the calls on her company phone.

154. Upon information and belief, plaintiff, SONYA DURAKU's supervisors recorded her phone calls in retaliation for her complaints of harassment, discrimination, and hostile work environment.

155. On August 21, 2008, Angelica told plaintiff, SONYA DURAKU, that Carpenter confirmed to her that Francis is trying to get plaintiff, SONYA DURAKU, fired.

156. On August 25, 2008, plaintiffs received a gift of a barrel of candles from a tenant. Plaintiffs also had a building pass for the gift which allows them to remove the item from defendant's building. Plaintiffs did not remove the candles from the building that night, but instead, placed the barrel in the women's locker room. On August 27, Francis accused plaintiff, SONYA DURAKU, of stealing the barrel from a tenant. Carpenter and Mongelo were also present during this meeting. Plaintiff explained that she was issued a pass, but Francis refused to examine the building pass. Francis also

accused plaintiff, SONYA DURAKU, who is a married woman, of having an intimate relationship with Matos.

157. Upon information and belief, Francis wrongfully accused plaintiffs, SONYA DURAKU and NIEVES SANCHEZ, of stealing, and refused to examine their building pass in an effort to intimidate and harass plaintiffs.

158. Upon information and belief, Francis wrongfully accused plaintiff, SONYA DURAKU, of infidelity in order to harass and humiliate her in front of her superiors and co-workers.

159. On August 28, 2008, Francis filed a "notice of reprimand," against plaintiff, SONYA DURAKU, claiming that she violated defendant's policy on August 26th by accepting gifts from a tenant, which is common practice amongst defendant's employees that supervisors are aware of and do not reprimand employees for. The complaint also states that plaintiff concealed the gift in a trash container.

160. On October 6, 2008, Francis called plaintiffs, SONYA DURAKU and NIEVES SANCHEZ, into his office. Francis wrongfully accused plaintiffs, SONYA DURAKU and NIEVES SANCHEZ, of harassing a new cleaning women, meaning Sandra Montee, who was the only new employee at the time. Montee was a cleaner that Francis hired.

161. Upon information and belief, Montee regularly accepts gifts from defendant's tenants, and Francis is aware that Montee regularly accepts of gifts from tenants.

162. Upon information and belief, Francis does not reprimand Montee because she is not of Albanian or Hispanic decent and because she has not made previous complaints of harassment or discrimination.

163. Upon information and belief, on October 15, 2008, Carpenter told Ira Bloom, one of defendant's head supervisors, that plaintiff, SONYA DURAKU, steals from tenants and that she is a bad worker. Angelica overheard the conversation in the office, and later conveyed this message to plaintiff, SONYA DURAU.

164. Upon information and belief, Carpenter lied to Bloom in order to get plaintiff, SONYA DURAKU, fired. Carpenter's acts against plaintiff were in retaliation of plaintiff's complaints of harassment.

165. In the fall of 2008, plaintiff, NIEVES SANCHEZ, complained to Francis about the discriminatory, harassing, and retaliatory manner in which he treats her.

166. When Francis's demeanor toward plaintiff, NIEVES SANCHEZ, remained the same, plaintiff made complaints to Carpenter regarding Francis's treatment toward her.

167. A few days after plaintiff, NIEVES SANCHEZ, made complaints to Carpenter, about the sliced cushion and broken desk chair in her office.

168. Upon information and belief, Carpenter ignored plaintiff, NIEVES SANCHEZ's complaints in retaliation for plaintiff's previous complaints to defendants of harassment, discrimination, and a hostile work environment.

169. On October 16, 2008, Francis told plaintiff, SONYA DURAKU, a foreperson, that she has to wear the same uniform that the cleaners wear. No other forepeople, except for plaintiff, at defendant's building are required to wear a cleaning uniform.

170. Upon information and belief, Francis forced plaintiff, SONYA DURAKU, to wear a cleaning uniform in order to humiliate her at work and in retaliation for her complaints of harassment and discrimination.

171. On October 22, 2008, plaintiff, SONYA DURAKU, received a threatening phone call on her mobile work telephone. A man's voice stated "your day is coming very soon. You should watch it because they are going to hurt you." Plaintiff, SONYA DURAKU, received the call while I was at work, and plaintiff immediately informed Carpenter about the threatening call. Carpenter took plaintiff's mobile telephone so she could monitor the calls.

172. On October 23, 2008, Mortensen informed plaintiff, SONYA DURKAU, that her new uniform is in plaintiff, NIEVES SANCHEZ's desk. When plaintiff, SONYA DURKAU, went to retrieve the uniform, it was crumpled in a ball and completely wrinkled. Plaintiff, SONYA DURAKU, immediately called Carpenter and asked if she could wash and iron it before she wore it. Carpenter said she had to speak to Francis. Francis then called plaintiff, SONYA DURAKU, into his office, and he forced plaintiff, SONYA DURAKU, to wear the wrinkled cleaners' uniform.

173. Upon information and belief, Francis forced plaintiff, SONYA DURAKU, to wear a cleaning uniform in order to humiliate her at work and in retaliation for her complaints of discrimination and harassment.

174. On October 24, 2008, plaintiff, SONYA DURAKU, received a radio call to report to the lobby for a telephone call. Once in the lobby, Ted (last name unknown), the security guard, put the call on speaker phone, and the caller stated, "I'm going to hurt you bitch." Plaintiff reported the call to Carpenter that day, and Carpenter told Ted to file a written report. The following Monday, Ted told plaintiff that Albert Shin and Carpenter made him change the report four (4) times according to their demands. Ted also told plaintiff to "be careful because they want to fire you."

175. Also on October 24, 2008, plaintiff, JULIA INIRIO, was suspended without pay. Plaintiff had never been disciplined by the defendant, and only was disciplined after making complaints of Lee and Francis's harassing and discriminatory behavior toward her.

176. On October 27, 2008, plaintiff, SONYA DURAKU, filed a report regarding additional threatening telephone calls she was receiving.

177. On November 15, 2008, Jerry (last name unknown), a security guard, told plaintiff, SONYA DURAKU, that she received multiple threatening telephone calls on her company mobile telephone, and that Carpenter was concealing them from her. Plaintiff, NIEVES SANCHEZ, also informed plaintiff, SONYA DURAKU, that same day that Francis had been asking the employees for her home telephone number. Robert, a security guard, also informed plaintiff, SONYA DURAKU, that Shin (last name unknown), an employee of defendant, asked him for plaintiff's home telephone number.

178. Upon information and belief, Francis wanted plaintiff, SONYA DURAKU's home telephone number so that he could make threatening and harassing telephone calls at her home.

179. On November 10, 2008, Francis called plaintiffs, SONYA DURAKU and NIEVES SANCHEZ, into his office. He had a recorder and a tape, and he proceeded to ask plaintiffs if they knew what was on the tape. Both plaintiffs responded "no." Francis then suspended plaintiffs, SONYA DURAKU and NIEVES SANCHEZ, pending an investigation.

180. Prior to plaintiff, NIEVES SANCHEZ, making complaints of Lee and Francis's treatment toward her, she had never been suspended.

181. From November 11, 2008, until June 1, 2009, plaintiff, NIEVES SANCHEZ, took an extended leave of absence for medical reasons, unrelated to this matter.

182. Sometime in 2008, Carmen Almanza, a foreperson and shop steward, screamed that all Albanian's are mafia, that they should all be fired because they smell and that the cleaners have to use Lysol to kill their smell because they contaminate the locker room. Almanza also threw chairs across the locker room while she said this. Plaintiffs, SONYA DURAKU, NIEVES SANCHEZ, and JULIA INIRIO, were present during this fit of rage as was, Shabani, Dabi, Cobovic, Mulaj, and Balic.

183. Plaintiffs reported Almanza's behavior to Francis.

184. Upon information and belief, Francis and Mortensen did not investigate and/or discipline Almanza in an effort to maintain the hostile work environment for plaintiffs.

185. Two weeks after plaintiff, SONYA DURAKU, was suspended, and defendant hired Jocelyn Liriano, Almanza's best friend, as a cleaner.

186. On or about January 20, 2009, plaintiffs, SONYA DURAKU, NIEVES SANCHEZ, and JULIA INIRIO, filed a Charge of discrimination based on gender and national origin, hostile work environment, and retaliation against defendant with the EEOC.

187. On February 2, 2009, plaintiff, SONYA DURAKU, returned to work after her suspension. Upon plaintiff, SONYA DURAKU's return, defendant demoted her from a foreperson to the position of cleaner. As a cleaner, plaintiff is paid less and has more difficult job duties. Defendant also promoted Almanza to the position of foreperson, replacing plaintiff, SONYA DURAKU.

188. Upon information and belief, defendant retaliated against plaintiff, SONYA DURAKU, by demoting her as a result of her filling a Charge with the EEOC.

189. Upon plaintiff, SONYA DURAKU's return to work after her suspension, Liriano confronted plaintiff, SONYA DURAKU, and stated "I am going to get you" and "I'm going to hurt you."

190. Plaintiff, SONYA DURAKU, reported Liriano's comments to Mortensen. Ivory Coles, Mortensen's supervisor, was present during the report.

191. Upon information and belief, Mortensen did not investigate plaintiff, SONYA DURAKU's complaints or discipline Liriano's for her unlawful and harassing conduct.

192. While plaintiff, SONYA DURAKU, was on suspension, half of her items were removed from her locker and condoms were placed amongst her personal items in her locker. Plaintiff, SONYA DURAKU, reported this to Susan Sherman, a Local 32BJ delegate, Jodi Goodman, a Local 32BJ attorney, Mortensen, and Coles.

193. Upon information and belief, defendant did not investigate plaintiff, SONYA DURAKU's complaint regarding the theft of her locker items in order to elevate the hostility of her work environment in an effort to make plaintiff quit her job.

194. From February of 2009 to present, Mortensen began to overtly scrutinize plaintiffs, SONYA DURAKU and JULIA INRIO, work in order to find fault.

195. Upon information and belief, Mortensen retaliated against plaintiffs as a result of their filling Charges against defendant with the EEOC.

196. In February of 2009, Mortensen retaliated against plaintiff, SONYA DURAKU, by threatening to write her up for wearing pants under her work uniform at work.

31

197. Upon information and belief, the majority of defendant's cleaners wear pants under their uniforms, especially during the winter, and Mortensen does not discipline any cleaners, except for plaintiff, SONYA DURAKU, for wearing pants under their uniform.

198. In February of 2009, plaintiffs, SONYA DURAKU and JULIA INIRIO, were exiting work with shopping bags when Mortensen saw plaintiffs, and forced them to throw all of their personal items from the bags on the floor so he could examine the plaintiffs' belongings. Immediately prior to this incident, two other cleaners walked passed Mortensen with shopping bags, and Mortensen did not inspect their bag or harass them.

199. Upon information and belief, Mortensen retaliated against plaintiffs, SONYA DURAKU and JULIA INIRIO, for filling a charge with the EEOC by humiliating them and forcing them to empty their bags in front of the other cleaners.

200. On April 29, 2009, Liriano approached a group of cleaners, including, plaintiff, SONYA DURAKU, Shabani, and Almanza. Liriano then began to scream "I'm going to kill someone in this building, and the police are the only thing that can stop me." Almanza, Liriano's supervisor, did not stop or discipline Liriano for her harassing and unlawful comments. Soon thereafter, plaintiff, SONYA DURAKU, reported the event to Mortensen and Coles.

201. Upon information and belief, neither Mortensen, Coles, nor Almanza conducted an investigation into plaintiff, SONYA DURAKU's complaint of Liriano in an effort to heighten the hostile work environment for plaintiffs.

202. On May 4, 2009, Liriano threatened plaintiff, SONYA DURAKU, by stating "I am waiting to get you real soon." The next day, Liriano admitted to Coles that she

threatened plaintiff, SONYA DURAKU, and Coles relayed the admission to plaintiff.

203. Upon information and belief, Coles did not discipline Liriano for her threatening behavior and comments toward plaintiff, SONYA DURAKU, in order to intimidate plaintiff and in retaliation for the Charges that plaintiffs filed with the EEOC.

204. On June 1, 2009, when plaintiff, NIEVES SANCHEZ, returned to work after an extended leave of absence, Mortensen informed her that her duties had significantly changed. Plaintiff was now assigned to clean, on a *daily* basis, half (1/2) of the 8th floor in addition to twenty-one kitchens ranging from the 8th to 38th floors in eight (8) hours. Plaintiff's previous assignment was to clean only the 10th floor. Typically, defendant's cleaners were only expected to clean half (1/2) of a floor in six (6) hours and one (1) kitchen per half (1/2) hour, totaling four (4) kitchens per day.

205. Upon information and belief, defendant substantially increased plaintiff, NIEVES SANCHEZ's duties in retaliation for her filing a charge with the EEOC.

206. On June 3, 2009, Liriano assaulted plaintiff, JULIA INIRIO, in the lobby by body slamming her against the glass door. There were multiple witnesses to this event including, plaintiff, SONYA DURAKU, plaintiff, SONYA DURAKU's husband, and the lobby security guards on staff that night.

207. Upon information and belief, defendant did not investigate Liriano's harassing and unlawful behavior in order to intimidate and scare plaintiffs, NIEVES SANCHEZ and SONYA DURAKU.

208. On June 25, 2009, Mortensen, Almanza, and Cruz approached plaintiff, NIEVES SANCHEZ, on the 8th floor while she was working and told her she had to, in addition to her overwhelmingly large work load, clean the stairways on the 8th and 9th

floors and sweep the corridors on the 8th floor. Plaintiff told her supervisors that it was impossible for her to complete all that work in one (1) day. Plaintiff then requested that Mortensen give her a written statement detailing what sections she had to clean, which defendant provided to all its cleaners. Mortensen refused fulfill plaintiff's request.

209. Upon information and belief, Mortensen refused to write plaintiff, NIEVES SANCHEZ's duties down because he intended to increase her duties periodically in retaliation for her filing a complaint with the EEOC.

210. Plaintiff, NIEVES SANCHEZ, made a written complaint to the Local 32BJ regarding defendant's increasing her workload.

211. Upon information and belief, Local 32BJ did not investigate plaintiff, NIEVES SANCHEZ's complaint.

212. On July 8, 2009, while plaintiff, NIEVES SANCHEZ, was working, she noticed that someone had placed items from defendant's tenants in her cleaning cart. Plaintiff immediately called Benny, the shop steward, and informed him of the incident.

213. Upon information and belief, plaintiff, NIEVES SANCHEZ's supervisors intentionally placed items on plaintiff's cart in an effort to get her fired for stealing from the tenants.

214. On July 13, 2009, while plaintiff, NIEVES SANCHEZ, was working, Almanza came to her floor and witnessed plaintiff speaking on the telephone through an earpiece while she worked. Almanza reported plaintiff to Mortensen for using the telephone while working. Mortensen issued plaintiff a warning, and told her if it occurs again, she will be suspended.

215. Upon information and belief, it is common policy for defendant's cleaners to speak on their personal telephone's via Bluetooth while working; however, Almanza and Mortensen targeted plaintiff, NIEVES SANCHEZ, and issued her a warning in retaliation for her filing a complaint with the EEOC.

216. In August of 2009, Ling, a cleaner for defendant, told plaintiff, NIEVES SANCHEZ, that she reported to Almanza that Ada (last name unknown), another cleaner, was talking on the telephone while working.

217. Upon information and belief, Almanza did not report Ada to Mortensen because Ada did not filed a report with the EEOC against defendant.

218. On August 24, 2009, plaintiff, SONYA DURAKU, returned to work after five (5) weeks of vacation, and her locker lock had been clipped, all of her items had been removed, and a new lock was on the locker. Plaintiff made complaints to Mulaj the following day.

219. Upon information and belief, that same day, Mulaj questioned Mortensen about plaintiff, SONYA DURAKU's, missing items, and Mortensen promised plaintiff that all of her items were in his office.

220. On August 26, 2009, plaintiff, SONYA DURAKU, claimed her items from Mortensen, but may of plaintiff's personal items, including pictures of her children and a DVD player were missing.

221. Upon information and belief, Mortensen purposefully removed items from plaintiff, SONYA DURAKU's locker in order to further harass her and in retaliation of her filling a complaint with the EEOC.

222. On September 24, 2009, Liriano assaulted plaintiff, SONYA DURAKU, in the hallway at work in front of multiple co-workers, including plaintiff, JULIA INIRIO, and foreperson, Emina Vukic. Liriano ripped plaintiff's bag from her shoulder. Mortensen interrupted the dispute, and Liriano immediately denied any wrongdoing.

223. Immediately thereafter, Liriano approached plaintiff, JULIA INIRIO, who was still in the hallway, and hit her on the chest. Liriano then proceeded to say, "you mother fucker, why don't you go complain about it to your boss."

224. Later that same day, plaintiffs, SONYA DURAKU and JULIA INIRIO, made complaints to Mortensen in his office. Mortensen said to plaintiff, SONYA DURAKU, that Vukic, an employee of defendant, gave a statement to Mortensen verifying that Liriano attacked plaintiff, SONYA DURAKU.

225. Upon information and belief, Mortensen did not discipline Liriano for assaulting plaintiffs.

226. Upon information and belief, Local 32BJ was provided with several opportunities to file a grievance against defendant on behalf of plaintiffs for discrimination, hostile work environment, and retaliation, but 32BJ has chosen not to do so.

227. Throughout the course of the plaintiffs' employment with the defendant, plaintiffs' have been repeatedly discriminated against based on their gender and national origin, which has resulted in a hostile work environment. Plaintiffs have been subjected to such discrimination over the course of three years, and made various complaints to their supervisors, Francis, Mortensen, and Almanza, concerning the hostile and offensive sexual harassment.

228. Upon information and belief, plaintiffs' supervisors have ignored plaintiffs' complaints of discrimination and thus permitting a hostile work environment to flourish and plaintiffs' workplace.

229. Throughout the course of the plaintiffs' employment with the defendant, in addition to plaintiffs' co-workers, plaintiffs' supervisors, Francis, Mortensen, and Almanza, have also repeatedly harassed plaintiffs based on their gender and national origin.

230. As set forth above, plaintiffs' supervisors created a hostile work environment that permeated the plaintiffs' workplace with discriminatory intimidation, ridicule and insult, that is so severe and pervasive, that it interfered with the essential functions of plaintiffs' job and has served to create an abusive atmosphere. Further, the defendant's refusal to address plaintiffs' repeated complaints of discrimination based on gender and national origin, has only served to exacerbate the situation as it has permitted the discriminatory conduct to continue in an unabated fashion. The hostile work environment and retaliatory treatment, to which plaintiffs have been subjected to, and the defendant's failure to prevent or correct the same, even it received plaintiffs' complaints, constitutes a violation of Federal, State and City law.

## AS AND FOR A FIRST CAUSE OF ACTION ON BEHALF OF PLAINTIFFS, SONYA DURAKU, NIEVES SANCHEZ, AND JULIA INIRIO, FOR DISCRIMINATION BASED ON GENDER UNDER TITLE VII AGAINST THE DEFENDANT

231. Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "230" of the Complaint, with the same force and effect, as if fully alleged herein.

232. By the acts and practices described above, including but not limited to creating a hostile work environment for ignoring plaintiffs' complaints of discrimination, the defendant discriminated against the plaintiffs in the terms and conditions of their employment on the basis of their gender, in violation of Title VII.

233. Defendant and its agents and individuals under its supervision and control, failed to take prompt and efficacious action to prohibit, prevent or discourage such conduct, and accordingly, accepted, ratified and authorized this activity, and thereby caused the creation of a work environment which was hostile.

234. Plaintiffs are now suffering and will continue to suffer irreparable injury and monetary damages as a result of the defendant's, failure to correct its workers discriminatory behavior.

235. Defendant acted intentionally and with malice and/or reckless indifference to plaintiffs' federally protected rights.

236. Any alleged reason for defendant's incidents of discrimination is nothing more than a pretext so that the defendant and its agents may attempt to mask their unlawful actions.

## AS AND FOR A SECOND CAUSE OF ACTION ON BEHALF OF PLAINTIFFS, SONYA DURAKU, NIEVES SANCHEZ, AND JULIA INIRIO, FOR DISCRIMINATION BASED ON NATIONAL ORIGIN UNDER TITLE VII AGAINST THE DEFENDANT

237. Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "236" of the Complaint, with the same force and effect, as if fully alleged herein.

238. By the acts and practices described above, including but not limited to creating a hostile work environment for ignoring plaintiffs' complaints of discrimination, the defendant discriminated against the plaintiffs in the terms and conditions of their employment on the basis of their national origin, in violation of Title VII.

239. Defendant and its agents and individuals under its supervision and control failed to take prompt and efficacious action to prohibit, prevent or discourage such conduct, and accordingly, accepted, ratified and authorized this activity, and thereby caused the creation of a work environment which was hostile.

240. Plaintiffs are now suffering and will continue to suffer irreparable injury and monetary damages as a result of the defendant's, failure to correct its workers discriminatory behavior.

241. Defendant acted intentionally and with malice and/or reckless indifference to plaintiffs' federally protected rights.

242. Any alleged reason for defendant's incidents of discrimination is nothing more than a pretext so that the defendant and its agents may attempt to mask their actions.

## AS AND FOR A THIRD CAUSE OF ACTION ON BEHALF OF PLAINTIFFS, SONYA DURAKU, NIEVES SANCHEZ, AND JULIA INIRIO, FOR RETALIATION UNDER TITLE VII AGAINST DEFENDANT

243. Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "242" of the Complaint, with the same force and effect, as if fully alleged herein.

244. By the acts and practices described above, including but not limited to demoting, plaintiff, SONYA DURAKU, increasing the workload of all plaintiffs thereby changing the terms and conditions of their employment, failing to address plaintiffs' complaints of discrimination, thereby creating a hostile work environment for plaintiffs', defendant retaliated against plaintiffs in the terms and conditions of their employment for opposing unlawful employment practices in violation of Title VII.

245. Defendant and its agents and those under their supervision and control engaged in purposeful retaliation against the plaintiffs, based upon said plaintiffs' good faith complaints of discrimination based on gender, national origin, and hostile work environment, by treating them differently in the terms of employment and discipline from other similarly situated workers.

246. Plaintiffs are now suffering and will continue to suffer irreparable injury and monetary damages as a consequence of the defendant's retaliatory acts.

247. Defendant acted intentionally and with malice and/or reckless indifference to plaintiffs' federally protected rights.

248. Defendant aforementioned retaliatory practices were continuous, concerted, abusive, extreme and outrageous.

40

249. Any alleged non-discriminatory reason is nothing more than a pretext so that the defendant and its agents and those under their control could attempt to mask their actions.

## AS AND FOR A FOURTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS, SONYA DURAKU, NIEVES SANCHEZ, AND JULIA INIRIO, FOR DISCRIMINATION BASED ON GENDER IN VIOLATION OF THE EXECUTIVE LAW, AGAINST DEFENDANT

250. Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "249" of the Complaint, with the same force and effect, as if fully alleged herein.

251. By the acts and practices described above, including but not limited to creating a hostile work environment for plaintiffs because of their gender and ignoring plaintiffs' complaints of discrimination, the defendant discriminated against plaintiffs in the terms and conditions of their employment on the basis of their sex in violation of the Executive Law.

252. Defendant is liable as an "employer" pursuant to the Executive Law.

253. Plaintiffs are now suffering and will continue to suffer irreparable injury and monetary damages as a consequence of the defendant's discriminatory acts.

254. Defendant and its agents and those under its supervision and control cannot demonstrate any legitimate non-discriminatory reason for the actions complained of herein; nor can its actions be otherwise justified.

255. Any alleged non-discriminatory reason is nothing more than a pretext so that the defendant and its agents could attempt to mask their actions.

256. The discriminatory acts of the defendant and its agents and those under their supervision and control were intentional and were performed with ill will and reckless indifference to the plaintiffs' protected rights.

### AS AND FOR A FIFTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS, SONYA DURAKU, NIEVES SANCHEZ, AND JULIA INIRIO, FOR DISCRIMINATION BASED ON NATIONAL ORIGIN IN VIOLATION OF THE EXECUTIVE LAW AGAINST DEFENDANT

257. Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "256" of the Complaint, with the same force and effect, as if fully alleged herein.

258. By the acts and practices described above, including but not limited to creating a hostile work environment for plaintiffs because of their national origin and ignoring plaintiffs' complaints of discrimination, the defendant discriminated against plaintiffs in the terms and conditions of their employment on the basis of their national origin in violation of the Executive Law.

259. Defendant is liable as an "employer" pursuant to the Executive Law.

260. Plaintiffs are now suffering and will continue to suffer irreparable injury and monetary damages as a consequence of the defendant's discriminatory acts.

261. Defendant and its agents and those under their supervision and control cannot demonstrate any legitimate non-discriminatory reason for the actions complained of herein; nor can their actions be otherwise justified.

262. Any alleged non-discriminatory reason is nothing more than a pretext so that the defendant and its agents could attempt to mask their actions.

263. The discriminatory acts of the defendant and its agents and those under their supervision and control were intentional and were performed with ill will and reckless indifference to the plaintiffs' protected rights.

## AS AND FOR A SIXTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS, SONYA DURAKU, NIEVES SANCHEZ, AND JULIA INIRIO, FOR RETALIATION UNDER THE EXECUTIVE LAW AGAINST THE DEFENDANT

264. Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "263" of the Complaint, with the same force and effect, as if fully alleged herein.

265. By the acts and practices described above, including but not limited to demoting, plaintiff, SONYA DURAKU, increasing the workload of all plaintiffs thereby changing the terms and conditions of their employment, failing to address plaintiffs' complaints of discrimination, thereby creating a hostile work environment for plaintiffs', defendant retaliated against plaintiffs in the terms and conditions of their employment for opposing unlawful employment practices in violation of the Executive Law.

266. The defendant retaliated against plaintiffs in the terms and conditions of their employment for opposing unlawful employment practices, in violation of Executive Law.

267. Defendant is liable as an "employer" pursuant to the Executive Law.

268. Plaintiffs are now suffering and will continue to suffer irreparable injury and monetary damages as a consequence of the defendant's retaliatory acts.

269.    Defendant and its agents and those under their supervision and control cannot demonstrate any legitimate non-retaliatory reason for the actions complained of herein; nor can their actions be otherwise justified.

270.    Any alleged non-retaliatory reason is nothing more than a pretext so that the defendant and its agents could attempt to mask their actions.

271.    The retaliatory acts of the defendant and its agents and those under their supervision and control were intentional and were performed with ill will and reckless indifference to the plaintiffs' protected rights.

## AS AND FOR A SEVENTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS. SONYA DURAKU, NIEVES SANCHEZ, AND JULIA INIRIO, FOR DISCRIMINATION BASED ON GENDER UNDER THE ADMINISTRATIVE CODE AGAINST THE DEFENDANT

272.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "271" of the Complaint, with the same force and effect, as if fully alleged herein.

273.    By the acts and practices described above, including but not limited to creating a hostile work environment for plaintiffs because of their gender and ignoring plaintiffs' complaints of discrimination, defendant discriminated against plaintiffs in the terms and conditions of their employment on the basis of their gender in violation of the Administrative Code.

274.    Defendant is liable as plaintiffs' "employer" pursuant to the Administrative Code.

275.    Plaintiffs are now suffering and will continue to suffer irreparable injury and monetary damages as a result defendant's discriminatory acts.

276.   Defendant acted intentionally and with malice and/or reckless indifference to plaintiffs' statutory rights.

## AS AND FOR A EIGHTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS FOR DISCRIMINATION BASED ON NATIONAL ORIGIN UNDER THE ADMINISTRATIVE CODE AGAINST THE DEFENDANT

277.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "276" of the Complaint, with the same force and effect, as if fully alleged herein.

278.   By the acts and practices described above, including but not limited to creating a hostile work environment for plaintiffs because of their national origin and ignoring plaintiffs' complaints of discrimination, defendant discriminated against plaintiffs in the terms and conditions of their employment on the basis of their national origin in violation of the Administrative Code.

279.   Defendant is liable as plaintiffs' "employer" pursuant to the Administrative Code.

280.   Plaintiffs are now suffering and will continue to suffer irreparable injury and monetary damages as a result defendant's discriminatory acts.

281.   Defendant acted intentionally and with malice and/or reckless indifference to plaintiffs' statutory rights.

## AS AND FOR A NINTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS, SONYA DURAKU, NIEVES SANCHEZ, AND JULIA INIRIO, FOR RETALIATION UNDER THE ADMINISTRATIVE CODE AGAINST THE DEFENDANT

282.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "281" of the Complaint, with the same force and effect, as if fully alleged herein.

283.   By the acts and practices described above, including but not limited to demoting, plaintiff, SONYA DURAKU, increasing the workload of all plaintiffs thereby changing the terms and conditions of their employment, failing to address plaintiffs' complaints of discrimination, thereby creating a hostile work environment for plaintiffs', defendant retaliated against plaintiffs in the terms and conditions of their employment for opposing unlawful employment practices in violation of the Administrative Code.

284.   Defendant is liable as plaintiffs' "employer" pursuant to the Administrative Code.

285.   Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendant's retaliatory acts.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs, respectfully request the following award awarded the following relief:

a.   declaring the acts and practices complained of herein are in violation of Title VII, the Executive Law, and the Administrative Code;

b.   enjoining and permanently restraining these violations of Title VII, the Executive Law, and the Administrative Code;

c.   directing defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful practices are eliminated and do not continue to affect the plaintiffs' employment opportunities;

d.   directing defendant to pay plaintiffs punitive damages as provided by Title VII and the Administrative Code;

e.   directing defendant to pay plaintiffs compensatory damages for emotional distress, mental anguish, and humiliation;

f.   directing defendant to place plaintiffs in the position they would have been in but for defendant's discriminatory and retaliatory treatment, and to make them whole for damage to their reputation and all earnings they would have received but for defendant's discriminatory and retaliatory treatment, including, but not limited to, back-pay, bonuses, pension and other lost benefits;

g.   directing the defendant to reinstate the plaintiff, SONYA DURAKU, as a foreperson;

h.    awarding of reasonable attorneys' fees, expert fees, costs and disbursements;

i.    awarding plaintiffs such interest as is allowed by law; and

j.    granting such other and further relief as the Court deems necessary and proper.

Dated: Melville, New York
       November 9, 2009

                                    Yours, etc.,


                                    MISIANO SHULMAN CAPETOLA &
                                    KESSLER, LLP.

                                    By: _____
                                        Troy L. Kessler, Esq. (TLK-4793)
                                        Marijana F. Matura, Esq. (MM-0519)
                                    Attorneys for Plaintiffs
                                    510 Broadhollow Road, Suite 110
                                    Melville, New York 11747
                                    (631)499-9100
                                    tkessler@mscklaw.com